FILED

2012 Oct-22 PM 06:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

March 10, 2009

Callie Hawkins
████████████
Huntsville, AL 35810

Dear Ms. Hawkins,

You filed a complaint with the Internal Affairs Division of the Huntsville Police Department, alleging misconduct by members of the City of Huntsville Police Department. Your complaint prompted a thorough investigation into the incident.

After reviewing the Investigative Report, I have determined that the employees acted within the accepted discretion of the Huntsville Police Department and no further action is deemed necessary at this time.

The Huntsville Police Department continuously strives to provide the best police services possible. We appreciate the opportunity to address your concerns. If we can assist you further, please do not hesitate to contact us.

Sincerely,


Henry J. Reyes
Chief of Police


HJR/dlc

D008023
Hawkins v. COH

### *OFFICE MEMORANDUM * CITY OF HUNTSVILLE, ALABAMA*

**DATE:**        March 10, 2009

**TO:**           Deputy Chief Mark Hudson
                 Operations Bureau

**FROM:**        Henry J. Reyes
                 Chief of Police

**SUBJECT:**     IA Case #09-02-015

On January 13, 2009, Callie Hawkins came to Internal Affairs jail alleging Officers A. Carmean (#14415) and B. Hopkins (#13360) used excessive force against her during her arrest.

Investigator M. Burch investigated the incident and concluded the allegation was either demonstrably false or there is no credible evidence to support it. Please inform said officers that **UNFOUNDED** was approved as the final disposition in this case.

Should you have any questions, please contact Sergeant Burnie Stedham, Internal Affairs, at 427-7012.

HJR/dlc

D008024
Hawkins v. COH

# HUNTSVILLE POLICE DEPARTMENT

## REPORT OF FINDINGS

**DATE: February 26, 2009**     **CASE #: 09-02-015**

**EMPLOYEE: Brian Hopkins**     **EMP #:   13360**

☒ **UNFOUNDED**     Either the allegation is demonstrably false or there is no credible evidence to support it.

☐ **PROPER CONDUCT**     Allegation is true and the action of the employee was consistent with policies and procedures.

☐ **INSUFFICIENT EVIDENCE**     Insufficient evidence to confirm or refute the allegations made.

☐ **IMPROPER CONDUCT**     Allegation is true and the action of the employee was unjustifiable and inconsistent with policies and procedures.

☐ **POLICY REVIEW RECOMMENDED**     Allegation is true and the action of the employee was not demonstrably inconsistent with policies and procedures or the action is inconsistent with policies and procedures but otherwise justifiable.

☐ **SUPERVISOR REVIEW**

By: *Marilyn L. Burch*     2/26/09
        I A Investigator                         Date

Concurrence: *B Steele*     2-27-2009
        I A Commander          ~~Yes~~/No     Date

        *Ceno Morris*     2-27-09
        Deputy Chief          Yes/No     Date

        *Henry Reyes*     03-02-09
        Chief of Police          Yes/No     Date

**COMMENTS: HPD Written Directive 101.13 - Use of Force**

D008025
Hawkins v. COH

# HUNTSVILLE POLICE DEPARTMENT

## REPORT OF FINDINGS

**DATE: February 26, 2009**  **CASE #: 09-02-015**

**EMPLOYEE: Amanda Carmean**  **EMP #: 14415**

☒ **UNFOUNDED**  Either the allegation is demonstrably false or there is no credible evidence to support it.

☐ **PROPER CONDUCT**  Allegation is true and the action of the employee was consistent with policies and procedures.

☐ **INSUFFICIENT EVIDENCE**  Insufficient evidence to confirm or refute the allegations made.

☐ **IMPROPER CONDUCT**  Allegation is true and the action of the employee was unjustifiable and inconsistent with policies and procedures.

☐ **POLICY REVIEW RECOMMENDED**  Allegation is true and the action of the employee was not demonstrably inconsistent with policies and procedures or the action is inconsistent with policies and procedures but otherwise justifiable.

☐ **SUPERVISOR REVIEW**

By: _Marilyn L. Busch_  2/26/09
  I A Investigator  Date

Concurrence: _B Steele_  2-27-2009
  I A Commander  ~~Yes~~/No  Date

_Erno Morad_  X  2-27-09
  Deputy Chief  Yes/No  Date

_Henry J Reyes_  Yes  03-02-09
  Chief of Police  Yes/No  Date

**COMMENTS: HPD Written Directive 101.13 - Use of Force**

D008026
Hawkins v. COH

**OFFICE MEMORANDUM**



**CITY OF HUNTSVILLE**

### Date: February 26, 2009

VIA CHAIN OF COMMAND

| APPROVD. | | DATE | INIT. | TITLE |
|---|---|---|---|---|
| YES | NO | | | |
| ✓ | | 2-27 | | SERGEANT |
| ✓ | | 2-27-09 | | DEPUTY CHIEF |
| ✓ | | 03 02 09 | | CHIEF |

**To:**      **Henry J. Reyes**
            **Chief of Police**

**From:**    **Investigator Marilyn L. Burch**
            **Internal Affairs**

**Subject:**   **I.A. Case #09-02-015**

### COMPLAINANT

| | |
|---|---|
| **NAME:** | **Callie Alexander Hawkins** |
| **DOB:** | |
| **RACE:** | **Black** |
| **SEX:** | **Female** |
| **ADDRESS:** | **Huntsville, AL 35810** |
| **PHONE #:** | **256** |

### ACCUSED

| | |
|---|---|
| **NAME:** | **Amanda Carmean** |
| **RANK:** | **Officer** |
| **EMPLOYEE #:** | **14415** |
| **ASSIGNMENT:** | **NPCT / 2nd shift** |

| | |
|---|---|
| **NAME:** | **Brian Hopkins** |
| **RANK:** | **Officer** |
| **EMPLOYEE #:** | **13360** |
| **ASSIGNMENT:** | **SOD/ 2nd Shift TF** |

D008027
Hawkins v. COH

## CIVILIAN WITNESSES

**NAME:**          **None**


## DEPARTMENTAL WITNESSES

**NAME:**          **Shawn Guzman**
**RANK:**          **Officer**
**EMPLOYEE#:**     **14395**
**ASSIGNMENT:**    **NPCT / 2nd shift**

**NAME:**          **Steven Graham**
**RANK:**          **Officer**
**EMPLOYEE#:**     **11390**
**ASSIGNMENT:**    **NPCT / 2nd Shift**


## DATE, TIME, & LOCATION OF INCIDENT

**DATE:**          **01-02-2009**
**TIME:**          **6:39 p.m.**
**LOCATION:**      **Laverne / Sparkman**


## DATE, TIME, & LOCATION OF COMPLAINT

**DATE:**          **01-13-2009**
**TIME:**          **3:25 p.m.**
**LOCATION:**      **815 Wheeler Ave.**


## ATTACHMENTS

1. **Initial Report of Complaint**
2. **Written Statement of Callie Hawkins**
3. **Written Statement of Officer Amanda Carmean**
4. **Written Statement of Officer Brian Hopkins**
5. **Written Statement of Officer Shawn Guzman**
6. **Written Statement of Officer Steven Graham**
7. **Call for Service Report #4047405**
8. **Arrest Report for Callie Hawkins**

2

D008028
Hawkins v. COH

## ALLEGATION

The complainant alleged that Officer Amanda Carmean and Officer Brian Hopkins used excessive force against her during her arrest.

## INVESTIGATION

On January 2, 2009, officers Carmean and Hopkins arrested Callie Hawkins and booked her into the Madison County Jail on the charges of Obstructing Government Operations, Harassment, and Resisting Arrest.

According to Ms. Hawkins, when Officer Carmean pulled her over, Officer Carmean accused her of having no intention to stop. Officer Carmean then asked to see her driver's license. When Ms. Hawkins asked Officer Carmean what she had done, Officer Carmean responded, "Bitch, I said give me your license, registration, and proof of insurance." Ms. Hawkins stated to Officer Carmean that she didn't have to talk to her that way and Officer Carmean then opened the car door and ordered her to get out of the car. When Ms. Hawkins again asked what she had done, Officer Carmean struck her in the chest with her flashlight. Ms. Hawkins asked Officer Carmean what was wrong with her and Officer Carmean struck her a second time. Ms. Hawkins told Officer Carmean not to hit her again and Officer Carmean sprayed her with pepper spray. Ms. Hawkins stated that she began to cry and scream and stated that Officer Carmean's treatment of her was racial. Officer Carmean responded that it wasn't racial, because her husband was black.

Officer Carmean started kicking her and the other officer, Officer Hopkins, started kicking her from the passenger side. Ms. Hawkins then began to blow the car horn to attract attention and Officer Carmean ordered Officer Hopkins to take the keys out so the horn would stop. Officer Carmean then ordered Officer Hopkins to unbuckle the seat belt. After he did this, he ran around the car, grabbed her arm, and twisted it backwards. Officer Carmean then grabbed her by the hair and threw her to the ground where Officer Hopkins kneed her in the back while Officer Carmean kicked her in the head and shoulders. Officer Carmean and Officer Hopkins did not attempt to handcuff her until they heard the sirens of the other police cars.

According to the statements of Officer Carmean and Officer Hopkins, when Officer Carmean attempted to perform a traffic on Ms. Hawkins at the intersection of Pulaski Pike and Sparkman Drive, Ms. Hawkins did not stop. She waited for a break in southbound traffic, then turned west on Sparkman. Officer Carmean was caught by traffic and had to wait for a break before she could turn west. Ms. Hawkins, in the mean time, did not slow or stop until she turned north onto Lavern and three houses from the intersection, [This was over a quarter mile from the intersection of Pulaski and Sparkman]. When Officer Carmean approached the vehicle, Ms. Hawkins refused to cooperate when Officer Carmean asked for her driver's license, registration, and insurance. Ms. Hawkins stated she did not have to give Officer Carmean anything, because she had not done anything.

3

At that time, Officer Carmean opened the car door and instructed Ms. Hawkins to step out of the car. Ms. Hawkins refused, pushed Officer Carmean in the chest, and attempted to close the door. When Officer Carmean pushed the door back open, Ms. Hawkins yelled, "Bitch, get your hands off of my car!" Officer Carmean pulled her OC Spray from her duty belt, shook it, and warned Ms. Hawkins to exit the vehicle or she would be sprayed. When Ms. Hawkins still refused to exit the vehicle, Officer Carmean sprayed her with the OC Spray. Ms. Hawkins began to scream racist remarks as she also began to blow the car horn. Officer Hopkins, who had gone to the passenger side, unbuckled Ms. Hawkins' seatbelt as Officer Carmean attempted to pull Ms. Hawkins from the car. Ms. Hawkins gripped the steering wheel with her right hand and would not let go. Officer Carmean then went to the passenger side of the vehicle and Officer Hopkins went to the driver's side.

Officer Hopkins attempted a rear wristlock to remove her from the vehicle, but she continued to grip the steering wheel with her right hand. Officer Hopkins gave Ms. Hawkins several verbal commands to exit the vehicle and she continued to refuse. Officer Hopkins then grabbed Ms. Hawkins by her pants and shirt and pulled her while Officer Carmean pushed from the passenger side. They were finally able to get Ms. Hawkins from the vehicle and onto the ground. Ms. Hawkins resisted being handcuffed until two additional officers (Officers Shawn Guzman and Steven Graham) arrived to assist with the cuffing.

According to Officer Guzman, neither he, Officer Carmean, nor Officer Hopkins struck Ms. Hawkins. Neither did anyone have their knee on her face or head. Additionally, Officer Graham stated that when he arrived, the offender was on the ground, but resisted being handcuffed. He ran up and gave the offender one knee strike to the common peronial, but no one else delivered any blows or had their knee on her face.

Although there was no audio, the video from Officer Hopkins' vehicle verified one statement made by Ms. Hawkins as well as the details given by the officers; Officer Carmean did slightly strike Ms. Hawkins, once, with her flash light. However, Ms. Hawkins did not complain of any injury casued by the strike, which appeared to be an instantaneous reflex to having been pushed. Additionally, the video showed Officer Hopkins pull Ms. Hawkins from the vehicle and onto the ground. Officer Carmean ran from the passenger side of the vehicle and attempted to cuff her right hand while Officer Hopkins attempted to get her left arm behind her back. The video showed Officer Carmean bent at the waist, in a stationary position on Ms. Hawkins' right side and shoulder area. Officer Guzman arrived and appeared to restrain Ms. Hawkins at the shoulders to the left side of Officer Hopkins. Officer Graham ran up to Officer Hopkins' right side and delivered one knee strike to Ms. Hawkin's common peronial. Officer Carmean was then able to handcuff Ms. Hawkins, who was then lifted from the ground and walked to Officer Hopkins' patrol vehicle, where she was placed in the back seat and transported to jail.

4

D008030
Hawkins v. COH

## CONCLUSION

Officers Amanda Carmean and Brian Hopkins attempted a traffic stop on Ms. Hawkins at the intersection of Pulaski Pike and Sparkman Drive. Ms. Hawkins did not stop and continued west on Sparkman until she finally came to a stop on Laverne. Officer Carmean asked Ms. Hawkins several times for her driver's license, registration, and proof of insurance and Ms. Hawkins refused to comply. Officer Carmean opened Ms. Hawkins car door and asked her to exit the vehicle. Ms. Hawkins then pushed Officer Carmean in the chest and attempted to close her car door with Officer Carmean standing between the open car door and Ms. Hawkins. Officer Carmean warned Ms. Hawkins that if she did not comply and exit the car, she would be sprayed with OC Spray. When Ms. Hawkins again refused to comply with Officer Carmeans' instructions, Officer Carmean sprayed her with the OC Spray. Officer Hopkins unbuckled Ms. Hawkins' seatbelt from the passenger side and walked around to the drivers' side where Officer Carmean was attempting to pull Ms. Hawkins from the car. Ms. Hawkins had gripped the steering wheel with her right hand and Officer Hopkins had to pull her from the car by gripping her pants and shirt and placed her on the ground.

Officers Carmean and Hopkins attempted to handcuff Ms. Hawkins, but she continued to struggle until officers Shawn Guzman and Steven Graham arrived to assist. Officer Guzmen held Ms. Hawkins shoulders to the ground while Officer Hopkins attempted to gain control of her left arm. Officer Carmean attempted to cuff her right hand, but she continued to struggle until Officer Graham delivered one knee strike to Ms. Hawkins common peronial. The officers were then able to handcuff Ms. Hawkins.

No other strikes or blows were delivered and none of the officers held Ms. Hawkins' head to the ground.

## FINDINGS

Based on the statements of the four officers involved and the evidence from Officer Hopkins car video, Officer Amanda Carmean and Officer Brian Hopkins utilized only the amount of force necessary to control and handcuff Ms. Hawkins. Ms. Hawkins' allegation that Officer Carmean and Officer Hopkins violated **HPD Written Directive 101.13, Use of Force** is **UNFOUNDED**.

_____

Investigator Marilyn L. Burch

MLB/

5

D008031
Hawkins v. COH