# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| ALAN KENT CHILDRESS,           ) | |
| )  | |
| Plaintiff,           ) | |
| )  | |
| vs.           ) | Civil Action No. CV-09-S-2489-NE |
| )  | |
| DONALD W. LONG,           ) | |
| and EDWARD L. HOUCK,           ) | |
| )  | |
| Defendants.           ) | |

## MEMORANDUM OPINION AND ORDER

This opinion addresses the parties' motions *in limine*.[1]

## I. AGREED ITEMS

The parties have agreed with regard to several categories of evidence. In accordance with the parties' agreements, the following items of evidence will *not* be permitted at trial:

- Evidence of prior and subsequent alleged misconduct by plaintiff.[2]

- Evidence of the financial condition of the defendants.[3]

---

[1] Doc. no. 148 (Plaintiff's Motion *In Limine*); doc. no. 151 (Defendants' First Motion *In Limine*); doc. no. 152 (Defendants' Second Motion *In Limine*); doc. no. 153 (Defendants' Third Motion *In Limine*); doc. no. 154 (Defendants' Fourth Motion *In Limine*); doc. no. 156 (Defendants' Sixth Motion *In Limine*); doc. no. 157 (Defendants' Seventh Motion *In Limine*); doc. no. 158 (Defendants' Eighth Motion *In Limine*); doc. no. 159 (Defendants' Ninth Motion *In Limine*); doc. no. 161 (Defendants' Fifth Motion *In Limine*) (erroneously filed out of order).

[2] *See* doc. no. 148 ¶ 1 (indicating that plaintiff's motion is unopposed with regard to this evidence).

[3] *See id.* ¶ 3 (indicating that plaintiff's motion is unopposed with regard to this evidence).

- Evidence relating to the criminal charge of obstructing governmental operations initiated by officers of the Huntsville Police Department against citizens other than plaintiff, including the frequency with which such charges are made and/or dismissed.[4]

- Evidence regarding the use of oleoresin capsicum spray by officers of the Huntsville Police Department not related to the incident involving plaintiff.[5]

- Evidence regarding allegations of wrongdoing against defendants Donald Long and Edward Houk, or any other officer involved in this matter, not related to the claims made by plaintiff, including, but not limited to, informal complaints to the Internal Affairs Division of the Huntsville Police Department, and/or actual lawsuits.[6]

- Evidence relating to whether the City of Huntsville is paying for the defense costs of defendants Donald Long and Edward Houk, and/or whether the City of Huntsville may satisfy any judgment that might be

---

[4] *See* doc. no. 152 (Defendants' Second Motion *In Limine*), at 1 (indicating the motion is unopposed).

[5] *See id.*

[6] *See* doc. no. 153 (Defendants' Third Motion *In Limine*), at 1 (indicating the motion is unopposed).

entered against those defendants.[7]

## II. PLAINTIFF'S MOTION *IN LIMINE* AND DEFENDANTS' FIRST MOTION *IN LIMINE*

The remainder of plaintiff's motion *in limine* seeks the exclusion of evidence of plaintiff's identification as a "citizen soldier," and evidence regarding the contents of plaintiff's home, including guns and ammunition.

### A.   Citizen Soldier

During his deposition, plaintiff testified that he served two years in the United States Air Force after leaving high school, then served for a year in the National Guard.  He stated that he comes from a family whose members believe they owe a duty to help keep the nation secure.  When asked if he came from a "military family," plaintiff responded, "Only in the sense that everyone that I know of from the male side of my family has served.  We are not retired military.  We are core, in the truest sense of the word, *citizen soldiers*."[8]

Plaintiff now asks that any evidence of his identification as a citizen soldier be excluded from trial because it is not relevant to any of the claims or defenses, and because any minimal relevance would be substantially outweighed by the danger of

---

[7] *See* doc. no. 157 (Defendants' Seventh Motion *In Limine*), at 1 (indicating the motion is unopposed).

[8] Doc. no. 111 (Defendants' Summary Judgment Evidentiary Submission), Exhibit A (Deposition of Alan Kent Childress), at 29-30 (emphasis supplied).

unfair prejudice.  *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). This court agrees with plaintiff.

The claims that will be tried are Fourth Amendment claims for arrest without probable cause, excessive force, and unreasonable search of plaintiff's home.  All of those claims arise out of an incident during which plaintiff was arrested from his home.  Plaintiff's self-identification as a "citizen soldier" has very little tendency to support any fact that is salient to his claims, or to defendants' defenses.  *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").  Defendants assert that the "citizen soldier" evidence "is relevant for the jury to determine [plaintiff's] credibility, particularly whether he believes his role as a citizen soldier allows him to ignore the lawful commands of police officers and whether he dealt properly with defendants in this case."[9]  As an initial matter, defendants have not demonstrated that discussing plaintiff's identification as a citizen soldier actually will assist them in proving that point.

---

[9] Doc. no. 162 (Defendants' Response to Plaintiffs Motion *In Limine*) ¶ 4 (alteration supplied).

During plaintiff's deposition, he discussed being a "citizen soldier" in the context of serving in the military and protecting the nation. There is no indication that any further testimony on the topic would elicit evidence that plaintiff does not respect the authority of police officers. Moreover, use of the term "citizen soldier" is not the only means by which defendants can elicit information regarding plaintiff's views on authority. Defendants can simply and directly question plaintiff about whether he thought he was required to submit to their authority as police officers during the incident that led to his claims in this case. Any minimal relevance that use of the term "citizen soldier" might have for that purpose would be substantially outweighed by the danger of unfair prejudice, and it will be excluded.

**B.     Guns and Ammunition Found in Plaintiff's Home**

The remaining arguments in plaintiff's motion *in limine* mirror the arguments in defendants' first motion *in limine*, so those motions will be addressed together. The evidence presented at summary judgment established that, after subduing plaintiff, defendants entered plaintiff's home to search it. Plaintiff stipulated that the officers' initial entry into the home to conduct a protective sweep was lawful, but he nonetheless argued that the search, which lasted approximately thirty minutes, exceeded the scope of a lawful protective sweep. During their search, the officers

found guns and ammunition.[10]

Plaintiff asserts that, because the guns and ammunition found by the officers had been legally obtained, their existence has no relevance to the claims in this lawsuit.  He alternatively asserts that the probative value of any gun evidence would be substantially outweighed by the risk of unfair prejudice.  The court disagrees. The presence of the guns and ammunition — which were in plain view after defendants lawfully entered the residence to conduct a protective sweep — is relevant to defendants' decision to conduct a more lengthy search of the residence, and the question of whether that decision was justified.  Moreover, the probative value of this evidence to defendants outweighs any unfair prejudice plaintiff would suffer as a result of its admission.  Plaintiff will be permitted, if he so desires, to explain his reasons for owning the guns and placing them in his residence.  He also will be permitted to testify regarding whether the guns were legally owned.

## II. DEFENDANTS' FOURTH MOTION *IN LIMINE*

In their fourth motion *in limine,* defendants seek to exclude evidence "relating to any performance evaluations, performance reviews, and/or past disciplinary hearings or actions related to Investigator Long, Investigator Houk, and/or any other

---

[10] *See* doc. no. 133 (Memorandum Opinion and Order on Motion for Summary Judgment), at 9-11.

law enforcement officers involved in the incident at issue in this case."[11] The court agrees with defendants that such evidence has "nothing to do with whether defendants used excessive force in arresting plaintiff, whether defendants falsely arrested plaintiff, and whether defendants unlawfully searched plaintiff's residence."[12] Moreover, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1) (alteration supplied). The evidence might have been relevant to demonstrate the City's liability for its officers' wrongs, but all claims against the City were dismissed on summary judgment.[13] Accordingly, there is no relevant purpose for the admission of this evidence, and it will be excluded.

### III. DEFENDANTS' FIFTH MOTION *IN LIMINE*

In their fifth motion *in limine*, defendants seek to exclude any evidence relating to the ultimate disposition of the charges filed against plaintiff for obstructing governmental operations.[14] The evidence presented at summary judgment indicated

---

[11] Doc. no. 154 (Defendants' Fourth Motion *In Limine*), at 1. Defendants indicated on the face of this motion that it was opposed, but plaintiff did not file a response to the motion.

[12] *Id.* ¶ 1.

[13] *See* doc. no. 133, at 47-54.

[14] Doc. no. 161 (Defendants' Fifth Motion *In Limine*), at 1. Defendants indicated on the face of this motion that it was opposed, but plaintiff did not file a response to the motion.

that, while plaintiff initially was convicted of obstructing governmental operations in the Huntsville Municipal Court, he ultimately was acquitted of the charges after a trial *de novo* in the Circuit Court.[15]  Defendants anticipate that plaintiff will attempt to use evidence of his acquittal to demonstrate that there was no probable cause to support his arrest for obstructing governmental operations.[16]  Defendants correctly point out that the Eleventh Circuit has held:

> That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself.  *See Trivette v. State*, 244 So.2d 173, 175 (Fla. App. 1971); *Brown v. State*, 91 So.2d 175, 177 (Fla. 1956); *see also Baker v. McCollan*, 443 U.S. 137, 145, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979) ("The Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted — indeed, for every suspect released.").  As Judge Learned Hand wrote, "the 'reasonable cause' necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties."  *United States v. Heitner*, 149 F.2d 105, 106 (2d Cir. 1945) (quoted in *Draper v. United States*, 358 U.S. 307, 311 n. 4, 79 S. Ct. 329, 332 n. 4, 3 L. Ed. 2d 327 (1959)).

*Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990).  Accordingly, plaintiff will not be permitted to argue to the jury that his acquittal is dispositive of the issue of probable cause.  That does not mean, however, that plaintiff should be precluded

---

[15] *See* doc. no. 133, at 11-12.

[16] Doc. no. 161 ¶ 1.

from any mention of the disposition of the criminal charges against him. Such evidence is not likely to confuse the jury if they are instructed that the probable cause inquiry is separate from the ultimate outcome of the criminal charges. Likewise, defendants will be permitted to introduce evidence, if they so desire, that plaintiff was first found guilty of the criminal charges in municipal court.

## IV. DEFENDANTS' SIXTH MOTION *IN LIMINE*

In their sixth motion *in limine*, defendants assert that plaintiff should be precluded from offering any specific evidence regarding his damages because he failed to produce an itemized list of damages, as required by the Pretrial Order.[17] Defendants' motion was filed at 4:57 p.m. on December 9, 2013, the date on which damage lists were due.[18] At 5:22 p.m. that same day, plaintiff filed his itemized list of damages.[19] Accordingly, defendants' sixth motion *in limine* is denied as moot.

## V. DEFENDANTS' EIGHTH MOTION *IN LIMINE*

In their eighth motion *in limine*, defendants assert that plaintiff should be precluded from offering any evidence or argument about a drawing that was made of

---

[17] Doc. no. 156 (Defendants' Sixth Motion *In Limine*), at 1. Defendants indicated on the face of this motion that it was opposed, but plaintiff did not file a response to the motion. *See also* doc. no. 147 (Pretrial Order), Exhibit A ¶ 1 ("The parties shall, by December 9, 2013, serve and file a list itemizing all damages and equitable relief being claimed or sought, showing the amount (and, where applicable, the method and basis of computation) of such items.").

[18] *See* doc. no. 156, at 1 (file stamp).

[19] Doc. no. 160.

plaintiff's residence on December 16, 2007, the night of the incident that serves as the basis for plaintiff's claims.[20]  Defendants anticipate that plaintiff will reference the drawing "in an effort to demonstrate that defendants' search of the residence went beyond the necessary search for clearing the property."[21]

Officer Marcus Hendrix, a SWAT Team member who arrived on the scene after Officers Long and Houk had already subdued plaintiff, testified that he joined Long and Houk in their search of the house.  Once the house had been cleared for security purposes, Hendrix decided to make a sketch of the interior layout of the house on a notepad because he had seen guns, and he thought the sketch might be useful "for future reference."[22]  He noted how all the rooms of the house were laid out, but he did not make a listing of the firearms that were seen, except to state that they were long guns.  He did not make a formal report of his findings, but testified during his deposition that he may have informally mentioned making the drawing to other members of the SWAT Team.[23]  Defendants Long and Houk both testified that they never saw Hendrix's drawing, and they did not know that Hendrix was creating such

---

[20] Doc. no. 158 (Defendants' Eighth Motion *In Limine*), at 1.  Defendants indicated on the face of this motion that it was opposed, but plaintiff did not file a response to the motion.

[21] *Id.* ¶ 1.

[22] Doc. no. 111 (Defendants' Summary Judgment Evidentiary Submission), Exhibit E (Deposition of Marcus Hendrix), at 10-11.

[23] *Id.* at 11-13.

a drawing on the night of the incident in question.[24]

Because there is no evidence that either defendant ever laid eyes on the diagram, the court can discern no valid reason for which the diagram could be introduced into evidence. This motion *in limine*, therefore, will be granted. Even so, this ruling should not be construed to prevent defendants from testifying from memory about the layout of plaintiff's home or its contents.

### VI. DEFENDANTS' NINTH MOTION *IN LIMINE*

In their ninth motion *in limine*, defendants assert that plaintiff should be precluded from offering any evidence or argument relating to the joint participant theory of liability plaintiff argued at summary judgment.[25] "Defendants anticipate plaintiff will attempt to argue to the jury that defendant Investigator Houk should be held liable to plaintiff for excessive force even though Investigator Long used the OC spray, under a 'joint participant' theory."[26] The summary judgment memorandum opinion entered by this court found:

> The court first will address plaintiff's argument that Houk should be held liable for excessive force, even though he was not the one who knocked plaintiff to the ground or sprayed him with pepper spray,

---

[24] Doc. no. 111 (Defendants' Summary Judgment Evidentiary Submission), Exhibit B (Deposition of Wesley Long), at 62-63, 68-69; *id.,* Exhibit C (Deposition of Eddie Houk), at 120-21, 140, 153-57.

[25] Doc. no. 159 (Defendants' Ninth Motion *In Limine*), at 1. Defendants indicated on the face of this motion that it was opposed, but plaintiff did not file a response to the motion.

[26] *Id.* ¶ 1.

because he "was a joint participant in the incident and . . . he had a clear opportunity to intervene to protect Childress." Plaintiff does not cite any authority to support this argument, and the court can find none to support the "joint participant" assertion. All of the cases this court could locate discussing a joint participant theory in an excessive force case did so in the context of determining whether a non-state-actor was a "joint participant" with a state actor, such that the non-state-actor could also be subjected to liability under § 1983. That situation clearly is not present here. And, in any event, there is no evidence that Houk actually acted jointly with Long in his use of force against plaintiff.[27]

Because the joint participant theory was disposed of at summary judgment, no evidence or argument to support that theory will be permitted at trial.[28]

### VII. CONCLUSION AND ORDERS

In accordance with the foregoing, plaintiff's motion *in limine* is GRANTED in part and DENIED in part. Defendants' first, second, third, fourth, seventh, eighth, and ninth motions *in limine* are GRANTED. Defendants' fifth motion *in limine* is DENIED. Defendants' sixth motion *in limine* is DENIED as moot. The evidence presented at trial must conform to the instructions set forth in this memorandum opinion.

DONE this 18th day of December, 2013.

_____
United States District Judge

---

[27] Doc. no. 133, at 36-37 (footnote omitted).

[28] Plaintiff *will* be permitted, however, to introduce evidence to support Houk's liability under a failure to intervene theory, as that theory was not precluded at summary judgment. *See id.* at 37.